# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**MICHAEL A. TUCKER**
  **Petitioner-defendant,**

 v.          **Case No. 15-C-1113**
            **(Criminal Case No. 09-CR-43)**

**UNITED STATES OF AMERICA**
  **Respondent-plaintiff.**

## DECISION AND ORDER

Pro se petitioner Michael Tucker filed a motion pursuant to 28 U.S.C. § 2255 to vacate his sentence after revocation of supervised release. Judge Randa ordered the government to file a response, and defendant then filed a traverse and request for an evidentiary hearing. Due to the unavailability of Judge Randa, the matter was reassigned to me. I now deny the motion.

## I. BACKGROUND

In the underlying criminal case, petitioner pleaded guilty to distribution of five grams or more of cocaine base, and on March 16, 2010, Judge Randa sentenced him to 60 months in prison followed by 4 years of supervised release. (Case No. 09-CR-43, R. 20.) Petitioner completed the prison term and commenced supervision on August 30, 2012. In April 2013, petitioner was arrested by state authorities and charged with possession of THC – 2d offense and possession with intent to deliver non-narcotic drugs. (R. 49 at 1-2.) The charges arose out of an April 16, 2013 traffic stop, during which police allegedly recovered marijuana from petitioner's person and vehicle, and the execution of a search warrant at petitioner's residence

later that day, during which officers allegedly seized from petitioner's bedroom a variety of pills, including methylenedioxypyrovalerone ("MDPV") and benzothiophenylcyclohexylpiperidine ("BTCP") tablets. (Id. at 2.) On April 26, 2013, Judge Randa issued a warrant to act as a detainer. (R. 40.) Petitioner later pleaded guilty to the THC charge in state court, with the other count dismissed and read in, and on October 2, 2014, the state court sentenced him to one year confinement followed by one year of extended supervision. (R. 52 at 2.)

On October 31, 2014, petitioner appeared with counsel for a revocation hearing before Judge Randa. (R. 63 at 1.) The parties jointly recommended that petitioner be remanded into federal custody and that the final revocation hearing be adjourned in anticipation of a joint recommendation as to the sentence. (R. 63 at 2-3.) Judge Randa remanded petitioner into custody and continued the hearing. (R. 63 at 5.)

On December 18, 2014, the parties appeared for the continued revocation hearing. (R. 64 at 1.) The revocation hearing report listed three alleged violations: (1) possession of marijuana, second offense (a felony under state law), a Grade B violation; (2) possession of non-narcotic pills with intent to distribute, a Grade A violation; and (3) failure to make payments towards court-ordered financial obligations, a Grade C violation. (R. 49 at 7.) Judge Randa indicated that he had reviewed the reports and asked the government if it intended to offer any evidence; the prosecutor said no. (R. 64 at 2.) Defense counsel stated that the defense also did not intend to offer evidence, but he indicated that:

> the defense does contest, I guess, what is listed as the grade A violation in here; the possession of, I guess, a Schedule I controlled substance.
>
> And I apologize; I was under the impression that the parties might jointly recommend that; but what happened is, there was a search warrant conducted at a house where my client resided on April 16, 2013.

2

> Both Mr. Tucker and his brother were subsequently charged as a -- partially as a result of that search; but for Mr. Tucker, he was also charged with possession of marijuana that's listed as one of -- the grade B violation. He does not contest that. But the pills apparently were found in a dresser drawer in a bedroom.
>
> The police reports indicate that there was mostly men's clothing there -- someone's clothing, and the police report indicates that my client's mother indicated that was Mr. Tucker's room.
>
> My client's mother, who is here today, indicates that she had told the officers that he sleeps there on occasion. She would tell the Court, if the Court would inquire today, that she -- this was a four-bedroom house. She resides there; has five children, all of whom reside there on and off; and that back in April there were a number of different people who slept in this particular bedroom.
>
> I would note that Mr. Tucker was in Racine County charged with two counts: The possession of marijuana, second offense, which he pled guilty to and was given one year of initial confinement, one year of extended supervision; the second count, which would be the grade A violation, revolved around the, I guess, the BTCP pills that were found, as well as another Schedule I. That was dismissed and read in; so he was not convicted of that.
>
> I understand the burden here is only preponderance of the evidence. Our argument would be that simply finding these pills in a bedroom where he sometimes sleeps would not be enough to show by a preponderance of the evidence.
>
> We're certainly not disputing, Your Honor, the facts alleged in the grade B violation.

(R. 64 at 2-4.) The government responded:

> The Government believes that by a preponderance of evidence the grade A violation is supported as set forth in the memo from the Probation Office.
>
> It's well-established that an individual can jointly possess an object, and possession is frequently defined as the ability to exercise dominium [sic] and control over something. There really isn't a dispute that the defendant is able to do that in this case. And that, combined with the standard, satisfies me that there is enough evidence to support the grade A violation.
>
> But from my perspective, I understand that the Court has to calculate the guideline range; and I offer that to assist the Court in doing that. But from my perspective it's a little bit besides the point because the Government is

3

recommending a revocation sentence of 17 months which is below the guideline for even a grade B violation.

If the most serious violation in this case was a grade B violation, I believe that his guidelines would be 21 to 27 months based, again, on the grade B violation and the category six criminal history category under Sentencing Guideline 7B1.4.

And the reason that the Government is recommending this sentence is partly because the quantity of the drugs that was recovered, although it's a serious offense, clearly because it happened while he was on supervised release, was really quite small. We're looking at five BTCP pills and 3.8 grams of marijuana.

And so I will go into my sentencing recommendation when the Court would like me to do that, but those are my thoughts about the guidelines.

(R. 64 at 4-5.)

Judge Randa then heard argument from the parties as to the sentence, with the government recommending a sentence of 17 months running concurrently with the state term (R. 64 at 6-9) and the defense asking for 12 months concurrent (R. 64 at 10). In support of his recommendation, defense counsel indicated that petitioner was convicted of possessing a small amount of marijuana; the "other matters with pills that were referenced, again, they're found in a drawer in a bedroom. My client was not present in the home at that time. It was other individuals that reside there. Those matters were dismissed. And it was dismissed as part of the plea in the other matter." (R. 64 at 10.)

Judge Randa found "that the burden is met that this is a grade A violation by a preponderance of the evidence; so it's dealing with the range of sentence that is established by that grade A violation and a criminal history category of six." (R. 64 at 14.) He then sentenced petitioner to 33 months in prison, the low end of the guideline range for a Grade A violation, see U.S.S.G. § 7B1.4, consecutive to the sentence in the state case. (R. 64 at 17.)

4

Petitioner filed a notice of appeal (R. 57) but later moved to dismiss his direct appeal. The Seventh Circuit granted that motion on March 24, 2015. (R. 65.)

In September 2015, petitioner filed this § 2255 action. In the motion, he stated: "I am contesting the Grade A violation. My actual conduct on a B violation." (Case No. 15-C-1113, R. 1 at 3.) Petitioner did not, in the motion, specify the grounds for his challenge. (Id. at 4-5.) In an "Affidavit" filed with the motion,[1] petitioner stated that his sentencing lawyer "did not do his job." (R. 2 at 1.) He further stated:

> I was not present, or resided at the residence that was searched 4-16-13. My lawyer failed to present witnesses supporting this claim at sentencing in which he prepared and believed I was in violation of a grade B violation.
>
> Under 18 U.S.C. §§ 3563(a)(1) and 3583(d), states, The grade of violation does not depend upon the conduct that is the subject of criminal charges or of which the defendant is convicted in a criminal proceeding. Rather, the grade of the violation is to be based on the defendant's actual conduct.

(Id.) Petitioner presented no additional evidence or affidavits in support of this claim.

In its response, the government argued that defense counsel did not provide ineffective assistance, attaching a copy of the police report regarding the discovery of the THC and pills. The report indicated that on April 16, 2013, police pulled petitioner over and recovered marijuana from his person and vehicle, as well as documents reflecting that he resided on Kenwood Drive in Racine. The police obtained a search warrant for the Kenwood residence, seizing pills from a bedroom identified as petitioner's by petitioner's mother, who was present at the time. The government argued that given this evidence counsel had no duty to argue that petitioner did not have dominion and control over the items in the bedroom. The government further argued that petitioner's absence from the residence at the time of the search was

---

[1]This paper is not notarized or otherwise signed under penalty of perjury.

irrelevant; indeed, it was impossible for him to be there at the time because he was already in custody. Finally, the government noted that counsel did argue in favor of a Grade B violation rather than a Grade A. (R. 6.)

In his reply, petitioner argued that the police searched his mother's residence, which he used only to receive correspondence; at that time, he actually lived with girlfriend at another location. (R. 7 at 1-2.) He further claimed that the police never asked his mother which room belonged to him, and that the room from which the pills were seized belonged to his sister and her boyfriend. He acknowledged that the police found correspondence bearing his name in the room but claimed that his sister collected his mail. (Id. at 2.) Petitioner stated that he explained this to his lawyer, and his mother was ready to testify; counsel allegedly responded that the government was holding petitioner responsible for the marijuana but not the pills, that his mother's testimony was not necessary, and that his violation was Grade B. (Id. at 2.) Petitioner concluded that counsel provided ineffective assistance by failing to investigate and present evidence from his mother, sister, and/or girlfriend regarding the pills, and failed to properly argue for the application of a Grade B violation; as a result, petitioner received a longer sentence. (Id. at 3-4.) Petitioner requested an evidentiary hearing to resolve the disputed factual issues. (Id. at 5.)

Petitioner attached to the reply brief an affidavit from his mother. In the affidavit, she indicated that she attended petitioner's revocation hearing ready to speak on his behalf but was not called. She further averred that she intended to speak "on the fact that the bedroom marked as Mr. Tucker's room was not an exclusive room for him." (R. 7-1 at 2.) She further averred that petitioner "mostly stayed with his female companion." (Id.) She indicated that the room listed as petitioner's "was one place he may have slept during times . . . but not he alone."

6

(Id.) She averred that the room contained male clothing, but "not exclusively the clothing of Michael Tucker." (Id. at 3.) Her daughter's male acquaintance also had clothing in that room. (Id.) Finally, she complained that the authorities failed to provide a list of the items removed from her home and never returned anything. (Id. at 3-4.)

## II.  DISCUSSION

**A.     2255 Standards**

Section 2255 permits a federal prisoner to challenge his sentence on the "ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Relief under § 2255 is available "only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." Blake v. United States, 723 F.3d 870, 878-79 (7th Cir. 2013). It does not serve as a substitute for direct appeal and, ordinarily, claims that could have been raised on direct appeal are barred from collateral review. See, e.g., Vinyard v. United States, 804 F.3d 1218, 1226 (7th Cir. 2015); Gant v. United States, 627 F.3d 677, 683 (7th Cir. 2010); Varela v. United States, 481 F.3d 932, 935 (7th Cir. 2007). Ineffective assistance claims are an exception, however, and may be raised for the first time under § 2255. Massaro v. United States, 538 U.S. 500, 504 (2003).

The district court need not hold an evidentiary hearing in every § 2255 case, even where factual improprieties are alleged. Cooper v. United States, 378 F.3d 638, 641 (7th Cir. 2004). The district court has discretion to deny an evidentiary hearing where the motion, files, and

7

records of the case conclusively show that the prisoner is entitled to no relief. Id. at 641-42. In addition, a hearing is not necessary if the petitioner makes allegations that are vague, conclusory, or palpably incredible, rather than detailed and specific. Martin v. United States, 789 F.3d 703, 706 (7th Cir. 2015).

**B.    Petitioner's Claim**

Petitioner argues that his lawyer provided ineffective assistance of counsel at the revocation hearing. However, the Sixth Amendment right to counsel does not apply at revocation hearings, United States v. Boultinghouse, 784 F.3d 1163, 1171 (7th Cir. 2015); absent a right to counsel, there can be no claim of ineffective assistance. See, e.g., United States v. Miller, 543 Fed. Appx. 612, 614 (7th Cir. 2013) (citing Gagnon v. Scarpelli, 411 U.S. 778, 790-91 (1973); United States v. Eskridge, 445 F.3d 930, 932-33 (7th Cir. 2006)). Nonetheless, because a revocation proceeding does implicate a defendant's liberty interest, the Fifth Amendment's due process clause accords the defendant certain basic procedural protections at a revocation hearing. Boultinghouse, 784 F.3d at 1171. Among these are a right to representation by counsel when the defendant has a colorable claim that he has not committed a violation of the conditions of his release or, alternatively, a substantial case to make against revocation, notwithstanding any violation, that may be difficult to develop or present. Id. Here, petitioner conceded violations of supervised release requiring revocation. However, because he contested the Grade A violation, I will assume that he had a constitutional right to counsel and will analyze his ineffective assistance claim under Sixth Amendment standards. See id. at 1172 (indicating that Sixth Amendment cases remain relevant in the revocation context).

Petitioner "bears a heavy burden" to establish an ineffective assistance of counsel claim.

8

Menzer v. United States, 200 F.3d 1000, 1003 (7th Cir. 2000). He must show (1) that his counsel's performance was deficient, in that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Constitution, and (2) that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). The court's review of a lawyer's performance is highly deferential, reflecting a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. Yu Tian Li v. United States, 648 F.3d 524, 527-28 (7th Cir. 2011). Petitioner must come forward with specific acts or omissions of his counsel that constitute ineffective assistance under prevailing norms. Hutchings v. United States, 618 F.3d 693, 697 (7th Cir. 2010). In order to establish prejudice, petitioner must show that there is a reasonable probability that, but for his counsel's mistakes, the result of the proceedings below would have been different. Strickland, 466 U.S. at 694. A reasonable probability is one sufficient to undermine confidence in the outcome. Id.

### 1. Failure to Call Witnesses

Petitioner argues that his attorney was ineffective because he did not call witnesses at the revocation hearing to establish that petitioner was not present and did not reside at the residence from which police recovered the pills involved in the Grade A violation. In order to prevail on this claim, petitioner must identify the missing witnesses, demonstrate what they would have said, and show how their testimony could have produced a different result. See George v. Smith, 586 F.3d 479, 486 (7th Cir. 2009); United States v. Rodriguez, 53 F.3d 1439, 1449 (7th Cir. 1995); United States v. Ashimi, 932 F.2d 643, 650 (7th Cir. 1991).

Petitioner presents an affidavit from his mother, who avers that she was prepared to testify that the bedroom marked as petitioner's was not exclusively his. As indicated above,

9

petitioner's attorney proffered this testimony at the revocation hearing, indicating that petitioner's mother was present and available if the court wanted to hear from her. Counsel also argued that petitioner was not present at that time of the search, that other individuals used this bedroom, and that simply finding pills in a room petitioner sometimes used was insufficient to establish the Grade A violation.

Petitioner asserts in reply that his mother would have also testified that the officers never asked her which room belonged to petitioner. However, his mother's affidavit contains no such statement. Petitioner's reply brief also asserts that he was living with his girlfriend and using his mother's house only to receive correspondence. However, his mother's affidavit states that while petitioner "mostly stayed with his female companion," he did use this room at times. Petitioner presents no evidence, aside from the bald statement in his reply brief, that he used the Kenwood residence only to receive mail. He provides no affidavit from his sister, and his mother's affidavit contradicts the contention that the residence was just a mail stop.[2]

Petitioner presents no other evidence in support of this claim. Based on the information provided, petitioner has not established that counsel performed deficiently by failing to call witnesses. Additionally, since the essence of petitioner's position was presented, he has not established that he was prejudiced by the claimed deficiency. To the extent that petitioner

---

[2]As indicated, petitioner filed a statement, labeled an affidavit, with his original motion, indicating that he was not present and did not reside at the residence that was searched on April 16, 2013. However, that paper is not notarized, nor is it sworn under penalty of perjury. Thus, it is not an affidavit or its equivalent. Cf. Dale v. Lappin, 376 F.3d 652, 655 (7th Cir. 2004). Further, this paper conflicts with his mother's sworn affidavit, which indicates that petitioner did stay at the Kenwood residence and kept clothes in the bedroom from which the pills were seized. Finally, petitioner presents no evidence that counsel prevented him from testifying, and Judge Randa gave petitioner a chance to say whatever he wanted at the revocation hearing.

10

wants to contest Judge Randa's finding of a Grade A violation and the resulting sentence, the time for such a challenge would have been on direct appeal.

### 2. Grade B Violation

Petitioner also argues that his attorney failed to properly argue for a Grade B rather than a Grade A violation. But as discussed above, the record shows that counsel did make this argument, indicating that although petitioner admitted the Grade B violation he contested the Grade A. Counsel argued that the discovery of pills in a room where a person sometimes sleeps is insufficient to establish a Grade A violation by a preponderance of the evidence. Because the record plainly shows that counsel did not make the error alleged, petitioner's claim fails. Again, to the extent petitioner argues he should have been sentenced under a Grade B violation, that was a claim for direct appeal. Finally, to the extent petitioner argues counsel erred in estimating his likely sentence, an inaccurate prediction of a sentence alone fails to establish ineffective assistance. See, e.g., Bethel v. United States, 458 F.3d 711, 717 (7th Cir. 2006).

### 3. Request for Hearing

In sum, the record plainly shows that petitioner is entitled to no relief on the claims raised. He presents no additional facts or assertions warranting an evidentiary hearing. See Cooper, 378 F.3d at 642; see also Prewitt v. United States, 83 F.3d 812, 819 (7th Cir. 1996) (holding that in order for a hearing to be granted the petitioner must have actual proof of the allegations going beyond mere unsupported assertions).[3]

---

[3]I have not in resolving this motion relied on the police report, which was not admitted into evidence at the revocation hearing.

11

## III.  CONCLUSION

**THEREFORE, IT IS ORDERED** that petitioner's § 2255 motion (R. 1) is **DENIED**, and this case is **DISMISSED**.  The Clerk is directed to enter judgment accordingly.

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, the district court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to a § 2255 petitioner.  In order to obtain a COA, the petitioner must make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  A substantial showing requires a demonstration that reasonable jurists could debate whether (or, for that matter, agree that) the motion should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.  Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).  For the reasons stated above, petitioner cannot make such a showing, so I decline to issue a COA.

Dated at Milwaukee, Wisconsin this 19th day of October, 2016.

/s Lynn Adelman
LYNN ADELMAN
District Judge